**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Desmond Cornelious,

Plaintiff,

v.

**Memorandum Opinion & Order**
01-CV-1254 (MGD/JGL)

Jason Brubaker, in his individual capacity as a police officer of the City of St. Paul; the City of St. Paul; Richard A. Defoe Enterprises, Inc., a Minnesota corporation d/b/a/ Club Cancun; Anthony Gardner; Joseph Anaya; Capital Investigations & Security Services, Inc., a Minnesota corporation d/b/a Capital Enforcement; and John Does Nos. 1 through 5,

Defendants.

Robert Bennett and Eric W. Hageman, Flynn Gaskins & Bennett, for and on behalf of the Plaintiff.

Gail L. Langfield-Seiberlich and Portia M. Hampton-Flowers, for and on behalf of the Defendants City of St. Paul and Jason Brubaker.

Sridevi S. Anwar, Rider Bennet, LLP and Brian Alan Wood, Lind Jensen Sullivan & Peterson for and on behalf of Defendant Richard A. Defoe Enterprises, Inc. d/b/a Club Cancun.

Barbara Ann Zurek, Meagher & Geer, and James Frederick Olney, Olney Law Office for and on behalf of Defendants Capital Investigations, Anthony Gardner and Joseph Anaya.

**INTRODUCTION**

This matter is before the Court upon summary judgment motions brought by the defendants as follows: Jason Brubaker ("Brubaker") and the City of St. Paul (collectively, "City Defendants"); Joseph Anaya ("Anaya"), Anthony Gardner ("Gardner") and Capital Investigations ("Capital")(collectively, "Capital

FILED JUN 2 6 2003
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Defendants"). For the reasons stated below, the defendants' motions for summary judgment are denied.

## BACKGROUND

In his Complaint, Plaintiff Desmond Cornelious ("Cornelious") alleges multiple federal and state claims against the defendants. In his Consolidated Memorandum in Opposition to Defendants' Motions for Summary Judgment, Cornelious argues that the only remaining claims he is asserting are: (1.) Count One of the Complaint asserting § 1983 claims against Officer Brubaker for the use of unreasonable force and false arrest; (2.) Count Five of the Complaint asserting a claim of respondeat superior against Capital Investigations; (3.) Count Seven of the Complaint asserting false imprisonment against Officer Brubaker, Anaya, and Gardner; and, (4.) Count Nine of the Complaint asserting a conspiracy claim against all defendants. (Pl.'s Mem. Opp'n to Summ. J. at 3).

At oral argument, the Court requested that the parties submit letters to the Court indicating their understanding of Cornelious' remaining claims. The parties' understandings reflect the above-listed counts set-forth in Cornelius' memorandum of law. As such, the Court will only consider those counts in its summary judgment analysis. The remaining claims are accordingly dismissed with prejudice.

## FACTUAL BACKGROUND

For the purposes of summary judgment, the Court views the facts in the light most favorable to Cornelious as the non-moving party.

**1. Cornelious' Background**

Cornelious is a 26 year-old African American man. He graduated in 1994 from De LaSalle High School in Minneapolis. (Cornelious Dep. at 10). Following high school, Cornelious attended Grambling State University in Louisiana for five years. (Id.). He was three credits short of graduating with a double major in psychology and sociology when he had to postpone his studies to return to Minneapolis on an emergency basis to care for his mother, a college professor, who had suffered a debilitating stroke. (Id. at 11). Cornelious works with troubled families and children as a counselor at Impact International in Brooklyn Park. (Id. at 12). Prior to the incident at issue, Cornelious had never been arrested for a crime. (Id. at 18).

On the evening of July 23, 2000, Cornelious and his friend Lawrence Clardy ("Clardy") went to Club Cancun in St. Paul, Minnesota. (Id. at 29). After arriving, Cornelious ran into Katie Koelfgen, a woman with whom he was involved in an intermittent sexual relationship. (Id. at 21). Koelfgen was there with her roommate, Cheri Bovee, and Bovee's friend, Barbara Jensrud. (Id. at 24, 44-45). Later that evening, Koelfgen saw Cornelious talking with another woman in the upstairs bar and threw a drink in his face. (Id. at 50-52, Cornelious Dep. at 54). A Club Cancun bouncer immediately approached Koelfgen, asked her to leave, and escorted her out of the bar. (Id. at 52). Cornelius was not ejected from

the club, but left the club voluntarily ten minutes after Koelfgen was ejected. (Id. at 62).

**2. Relationship of the Parties**

At the same time Koelfgen was seeing Cornelious, she was also involved in a relationship with Capital Investigations security officer Antwayn Hunter. (Koelfgen Dep. at 26). Hunter and Anaya had been friends for approximately three years, and Gardner also knew Hunter through work. (Anaya Dep. at 33, Gardner Dep. at 68). Anaya was acquainted with Koelfgen through her relationship with Hunter. (Anaya Dep. at 36, 44). Koelfgen testified that Anaya was "sort of seeing" her roommate, Cheri Bovee, when this incident occurred and that they had been on dates together, including watching movies at Koelfgen's apartment. (Koelfgen Dep. at 30).

**3. Outside Club Cancun**

After being escorted out of Club Cancun, Koelfgen walked to the front of the building and saw her friend Anaya, who was working security outside the bar. (Id. at 53). She told Anaya that she had thrown a drink in her ex-boyfriend's face and was ejected from the bar. (Id. at 54, 56). Koelfgen told Anaya that Cornelious was her ex-boyfriend because she was seeing Anaya's friend, Hunter, at the time. (Id. at 54).

Anaya testified that he knew Cornelious had not been ejected from the club. (Anaya Dep. at 57). Anaya asked Koelfgen twice if she wanted him to beat Cornelious up. (Koelfgen Dep. at 118). Koelfgen told him 'no'. (Id. at 119).

Shortly thereafter, Cornelious exited Club Cancun and saw Koelfgen talking to Anaya. (Cornelious Dep. at 66). Koelfgen began talking to Cornelious and he responded by telling her, "you didn't have any business throwing a drink in my face." (Id. at 74). Koelfgen initiated the conversation with Cornelious. (Id.).

After the exchange with Koelfgen, a Capital Investigations security officer began yelling at Cornelious. (Id. at 75). Clardy testified that the guard moved aggressively into Cornelious' face. (Clardy Dep. at 86). Cornelious stated that he said something like, "wait, wait—you don't even know the situation… this bitch just threw a drink in my face." (Id.). Upon hearing the word "bitch," Koelfgen slapped Cornelious on the face. (Cornelious Dep. at 75).

Cornelious said, "I'm done," or, "I'm leaving" and began to walk across the street toward his car. (Id. at 85).

**4. Events in the Street**

As Cornelious crossed Rice Street, he realized that his driver, Clardy, was still somewhere outside the club. (Cornelious Dep. at 86). When he turned back to locate Clardy, Brubaker and Anaya yelled at him, to "get the hell out of here." (Id.). Cornelious testified that when he looked back, he was across the street and only a couple of steps from the sidewalk. (Id. at 87). Cornelious said, "fuck you all," to Officer Brubaker and Anaya, who were across the street from him. (Id. at 88).

Brubaker immediately charged across the street at Cornelious, followed closely by both Gardner and Anaya. (Id. at 90). Brubaker immediately maced Cornelious

and then took him to the ground, where Cornelious was hit and kicked repeatedly. (Id. at 92, 94-95). Brubaker was on top of Cornelious and was saying "don't fuck with police." (Id. at 97, 100). Cornelious was called a "nigger" while he was hit and kicked on the ground by Officer Brubaker, Gardner, and Anaya. (Id. at 96, 99).

Gardner and Anaya gave accounts that conflict with Cornelious' testimony. Gardner testified that Cornelious and Brubaker were "fighting" in the street alone, for between two and one-half to three minutes before Gardner decided to intervene. (Gardner Dep. at 123-24, 126).

Anaya testified that Cornelious and Brubaker were engaged in the street for only a few seconds before he assisted. (Anaya Dep. at 89). Anaya stated that he never touched Cornelious at any time. (Id. at 99-100). However, Anaya previously told Internal Affairs that he, "ran over to assist Brubaker and Gardner in trying to put some restraints on this guy…I would just kind of hold the guy, and I kind of helped pull his arm around while they cuffed him." (Transcript of STP 00363 Anaya of 1/25/01, 11).

Koelfgen testified that Anaya ran out with Brubaker immediately after Cornelious said, "fuck you." (Koelfgen Dep. at 99). She stated that Anaya hit Cornelious in the back with a fist. (Id. at 79).

**5. In the Squad Car**

After Cornelious was handcuffed, he was put in Officer Brubaker's squad car. (Brubaker Dep. at 85). Officer Brubaker drove away from Club Cancun at 1:10

a.m. (Id. at 25). Several blocks away from Club Cancun, Officer Brubaker stopped the squad car, got out, opened the back door, maced Cornelious, who was handcuffed, and started assaulting him again. (Cornelious Dep. at 119). During the beating, Officer Brubaker shouted, "never fuck with the police, motherfucker." (Id.) Officer Brubaker also said, "I should take you underneath the bridge and kick your ass." (Id.).

Cornelious heard a transmission on the police radio regarding an officer-involved shooting. (Id. at 121). Officer Brubaker jumped off Cornelious and took him, at high-speed, to the shooting scene, less than four miles away. (Id.). At the scene, Cornelious heard Officer Brubaker talking to another police officer, chuckling that he had someone in his car. (Id. at 123). Officer Brubaker denies macing or striking Cornelious in the squad car and denies going to the scene of the shooting. (Brubaker Dep. at 57-58).

Cornelious claims that Officer Brubaker's testimony is false based on inconsistent testimony and police reports regarding the events at Club Cancun and thereafter:

(1.) The 911 tape summary indicates that at 1:10 a.m., Officer Brubaker made a transmission saying he was "en route to Regions Hospital with one." (Id. at 127).
(2.) Regions Hospital is approximately 3.0 miles from Club Cancun. (Id. at 24).
(3.) At 1:14 a.m., a transmission regarding a police officer-involved shooting was dispatched. (Id., Ex. 11).
(4.) The Regions Hospital Security logbook indicates that Brubaker arrived at the hospital with Cornelious at 1:30 a.m. (Id. at 23-24, Ex.13).

(5.) It is approximately 3.7 miles from Club Cancun to the location of the shooting incident and 2 miles from the shooting scene to Regions Hospital. (Id. at 57-58).
(6.) It is approximately 3.7 miles from Club Cancun to the location of the shooting incident and two miles from the shooting scene to Regions Hospital (Id.).

In support of his claims against Officer Brubaker, Cornelious points to the following inconsistencies in Officer Brubaker's accounts of that evening.

(1.) On February 14, 2001, Officer Brubaker told Internal Affairs that he was still on the scene at Club Cancun, interviewing security officers and witnesses when the 1:14 a.m. transmission regarding the officer-involved shooting was made. (Id., Ex. 17).
(2.) In his deposition, on January 24, 2002, Brubaker admitted that he was in his squad car at 1:14 a.m., the time of the shooting. (Id. at 51). At that point, he testified he was four minutes into his transport of Cornelious to Regions Hospital. (Id. at 52).
(3.) In an errata sheet dated August 19, 2002, Brubaker changed his story in order to correct and clarify. Officer Brubakers' deposition testimony states: "I was still on the scene at Club Cancun at 01:14 hours," "I think I was still on the scene at 01:14 hours" and "at 01:14 hours I believe I was still at Club Cancun." (Id. at signature page).
(4.) Prior to making the purported corrections seven months after his testimony, Brubaker testified that he left Club Cancun at 1:10 when he made the transmission "en route to Regions with one." (Id. at 25).
(5.) In the errata sheet dated over two years after the incident, Brubaker changed his answer, again claiming that, upon further reflection, he had not left Club Cancun at 1:10 a.m. (Id. at signature page).

**STANDARD OF REVIEW**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); Celeotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, L.Ed.2d 265 (1986). Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The moving party bears the initial burden of identifying evidence,

which demonstrates the absence of a genuine issue of material fact. Id. at 323, 106 S.Ct. at 2552. Once that burden is met, the non-moving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The non-moving party then bears the burden of setting forth specific facts showing that there is evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In addition, the Court is required to resolve all conflicts of evidence in favor of the non-moving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). This notwithstanding, in order to defeat summary judgment when a properly supported motion for summary judgment is made, the non-moving party must go beyond the pleadings and designate, "specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250. Where a plaintiff has failed, "to make a showing sufficient to establish the existence of an element essential to [its] case, and on which [it] will bear the burden of proof at trial," the defendant is entitled to summary judgment. Celeotex Corp., 477 U.S. 317 at 322, 106 S.Ct. at 2552.

## DISCUSSION

### I. Capacity of Suit

The City Defendants assert that Officer Brubaker was not sued in his individual capacity. A suit against a government official in his official capacity is

a suit against the entity, in this case, the City of St. Paul. See Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir.1999). The City Defendants argue that Cornelious captioned his Complaint, "Jason Brubaker in his individual capacity as a police officer of the City of St. Paul," and that this was insufficient to put Officer Brubaker on notice that he was being sued in his individual capacity.

In order to state a 42 U.S.C. § 1983 claim against a government official in his or her individual capacity, the complaint must clearly indicate that it is a suit against the person in his or her individual capacity. See Nix v. Norman, 879 F.2d, 431-32 (8th Cir. 1989). The caption in the Complaint specifically states, "Jason Brubaker, in his individual capacity as a police officer of the City of St. Paul." The Eighth Circuit held in Jackson v. Crews, 873 F.2d 1105, 1107 (8th Cir. 1989) that, "Robert L. Jackson v. Gary R. Crews, A Fayetteville City Policeman, and the City of Fayetteville, Arkansas, a Municipal Corporation," was sufficient language to put the officer on notice that he was being sued in his individual capacity. See id. at 1107. The Eighth Circuit, however, made note to future § 1983 litigants, "that it would be much better for them to clearly indicate both the parties being sued and their capacity in the caption." Id. Here, the language "Jason Brubaker in his individual capacity" is asserted in the caption. The Court concludes that the caption in this instance gives ample notice to the defendant that he is being sued in his individual capacity. Further, the Complaint specifies that Cornelious is seeking punitive damages against Officer Brubaker. This type of remedy is not available against government entities. See City of Newport v. Fact Concerts, Inc.,

453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981); see also Helseth v. Burch, 109 F. Supp.2d 1066, 1073-1074, overruled on other grounds, 258 F.3d 867 (8th Cir. 2001).

Accordingly, Cornelious' has adequately asserted his § 1983 claims against Officer Brubaker in his individual capacity.

## II. 42 U.S.C. § 1983 Claims

In his Complaint, Cornelious alleges that Officer Brubaker deprived him of his constitutional rights in violation of 42 U.S.C. § 1983 through the use of false arrest and excessive force. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . .

Id.

A plaintiff bringing a § 1983 claim must establish: (1.) a deprivation of a right secured by the constitution or laws of the United States; and (2.) that the deprivation was committed "under color" of state law. Lugar v. Edmondson Oil Co., 457 U.S. 922, 931, 102 S.Ct. 2744, 2750, 73 L.Ed.2d 482 (1982); Cooksey v. Boyer, 289 F.3d 513, 515 (8th Cir. 2002). Section 1983, "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-394, 109 S.Ct.

1865, 1870, 104 L.Ed.2d 443 (1989)(quoting Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S.Ct. 2689, 2694, n.3, 61 L.Ed.2d 433 (1979)).

**A. False Arrest**

Cornelious asserts that Officer Brubaker violated his constitutional rights through false arrest. The City Defendants argue that qualified immunity shields Officer Brubaker from Cornelious' § 1983 claims. The purpose of qualified immunity is to "allow public officers to carry out their duties as they believe are correct and consistent with good public policy. . ." Sparr v. Ward, 306 F.3d 589, 593 (8th Cir. 2002). Where a government official is sued in his individual capacity, the official is protected from liability by qualified immunity where the official's conduct does not "violate clearly established statutory or constitutional rights of which reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A right is clearly established if the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful. . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. Thus, in evaluating a motion for summary judgment on qualified immunity grounds, the Court must engage in a three–pronged analysis by inquiring whether the plaintiff has: (1.) asserted a violation of a constitutional right; (2.) demonstrated that the

alleged right is clearly established; and (3.) raised a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated [the] plaintiff's clearly established right. Habiger v. City of Fargo, 80 F.3d 289, 295 (8th Cir.), cert. denied, 519 U.S. 1011, 117 S.Ct. 518, 136 L.Ed.2d 407 (1996).

There is "a clearly established right under the Fourth Amendment not to be arrested unless there [is] probable cause [for the] arrest." Here, the City Defendants argue that there was probable cause to arrest because Cornelious was obstructing traffic by standing in the middle of the street, ignored Officer Brubaker's directive to get out of the street and yelled obscenities. (See City's Mem. in Supp. Summ. J. at 13). The City Defendants argue that this constitutes "disorderly conduct" in violation of Minn. Stat. § 609.72 and, therefore, Officer Brubaker had probable cause to effectuate an arrest. Minn. Stat. § 609.72 states in relevant part:

> Subdivision 1. Whoever does any of the following in a public or private place, including on a school bus, knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct, which is a misdemeanor:
> (1) Engages in brawling or fighting; or
> (2) Disturbs an assembly or meeting, not unlawful in its character; or
> (3) Engages in offensive, obscene, abusive, boisterous, or noisy conduct or in offensive, obscene, or abusive language tending reasonably to arouse alarm, anger, or resentment in others.

Id.

Initially, the Court rejects the City Defendants' assertion that Cornelious was standing in the middle of the road and ignoring the officer's orders. This is not viewing the facts in the light most favorable to Cornelious as the non-moving party. Cornelious' testimony indicates that he had reached the other side of Rice Street and was in the process of voluntarily leaving the Club Cancun vicinity when he yelled at Officer Brubaker and Capital Investigations security officers. Therefore, the only arguable basis the City Defendants have for asserting probable cause to arrest under the disorderly conduct statute is Cornelious' admitted yelling of "fuck you all" to the officer and security personnel.

The "First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." City of Houston v. Hill, 482 U.S. 451, 107 S.Ct. 2502, 2509 n.12, 96 L.Ed.2d 398 (1987). As the Supreme Court stated in Hill, "The freedom of individuals to oppose or challenge police action verbally without thereby risking arrest is one important characteristic by which we distinguish ourselves from a police state. Hill, 482 U.S. at 462-463."

"Although the right of free speech is not absolute, the First Amendment generally prevents the government from proscribing speech of any kind simply because of disapproval of the ideas expressed." Burnham v. Ianni, 119 F.3d 668, 674 (8th Cir. 1997)(citing R.A.V. v. City of St. Paul, 505 U.S. 377, 382, 112 S.Ct. 2538, 2542-43, 120 L.Ed.2d. 305 (1992). One of the sole areas of speech that the government is constitutionally permitted to proscribe are words which constitute

"fighting words." See Chaplinsky v. New Hampshire, 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). Fighting words are words, "which by their very utterance inflict injury or tend to incite an immediate breach of the peace. . ." Id. at 572.

The City Defendants do not argue that the words Cornelious shouted across the street to Officer Brubaker were fighting words, nor does the Court find that they were. Rather, the term "fuck you" and similar curses have been upheld as constitutional forms of expression absent other aggravating circumstances. See, e.g., Nichols v. Chacon, 110 F. Supp.2d 1099 (W.D. Ark. 2000)(discussing cases); Sandul v. Larion, 119 F.3d 1250 (6th Cir. 1997); Duran v. City of Douglas, 904 F.2d 1372 (9th Cir. 1989); United States v. Poocha, 259 F.3d 1077 (9th Cir. 2001).

In Cohen v. California, 403 U.S. 15, 26, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971), the Supreme Court held regarding the expression "fuck you" that, "[a] State may not, consistently with the First and Fourteenth Amendments, make the simple public display of . . . [a] four-letter expletive a criminal offense." Id. at 265.

In Durham, the Ninth Circuit held that a plaintiff's use of expletives and an obscene hand gesture toward police officers was protected speech and did not constitute fighting words. Id., 904 F.2d at 1378. More recently, the Sixth Circuit held in Poocha that a person's clenching his fists, sticking out his chest and yelling "fuck you" to an officer was not fighting words and were not cause for a conviction under a disorderly conduct statute. Poocha, 259 F.3d at 1082. (citing Duran, and Guilliford v. Pierce County, 136 F.3d 1345 (9th Cir. 1998)). Likewise,

the Eighth Circuit in Buffkins v. City of Omaha, 922 F.2d 465 (8th Cir. 1990), held that calling a police officer an "asshole" was not fighting words, but rather, protected speech.

Further, the City Defendants have presented no additional evidence indicating there was, at the moment Cornelious yelled to Officer Brubaker and Anaya, a risk of a breach of the surrounding peace. As the Eighth Circuit stated in Buffkins, "there is no evidence that [the plaintiff's] speech was an incitement to immediate lawless action." Buffkins, 922 F.2d at 472. Therefore, Cornelious' choice of words in criticizing Officer Brubaker constituted protected speech under the First Amendment.

The Court also finds that at the time of Cornelious' arrest, it was clearly established that speech, other than fighting words, was protected under the First Amendment. See Sandul, 119 F.3d at 1255. The Supreme Court's decisions in Chaplinsky, Cohen, and Hill were already decided prior to Cornelious' arrest, as were most of the cases cited by the Court. As the court in Sandul stated, "[t]hese cases should leave little doubt in the mind of a reasonable officer that the mere words. . .'f_ck you' are constitutionally protected speech." Id. at 1256.

Further, an objectively reasonable officer is expected to know that he cannot use his power to arrest to punish speech that he finds offensive or disagrees with. The Supreme Court has suggested that, even when fighting words are involved, "a narrower application in cases involving words addressed to a police officer" might be called for, "because 'a properly trained officer may reasonably

be expected to exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" Hill, 107 S.Ct. at 2510 (J. Powell concurring)(quoting Lewis v. City of New Orleans, 415 U.S. 130, 94 S.Ct. 970, 973 39 L.Ed.2d 214 (1974)); see Nichols, 110 F.Supp.2d at 1104.

The City Defendants argue that Officer Brubaker nonetheless had probable cause to arrest. A section 1983 claim of false arrest fails where the officer had probable cause to arrest. See Kurtz v. City of Shrewsbury, 245 F.3d 753, 758 (8th Cir. 2001); Anderson v. Franklin County, 192 F.3d 1125, 1131 (8th Cir. 1999). "'Probable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person. . . in believing in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37, 99 S.CT. 2627, 61 L.Ed.2d 343 (1979). The City Defendants also argue that, at a minimum, Officer Brubaker had arguable probable cause to arrest, that is, he could have reasonably believed he had probable cause. See Adewhale v. Whalen, 21 F.Supp.2d 1006, 1013 (D. Minn. 1998); Gorra v. Hanson, 880 F.2d 95, 97 (8th Cir. 1989).

Viewing the facts in the light most favorable to Cornelious, there was no probable cause to arrest where the arrest was based on Cornelious' use of protected speech. The Plaintiff's words were not "fighting words" and, as such, could not form a basis for arrest under the state disorderly conduct statute. See Sandul, 119 F.3d at 1256; Buffkins, 922 F.2d 465 (holding no probable cause to

arrest as a matter of law where plaintiff's swearing at police officers was not "fighting words").

Nonetheless, there is a dispute of fact as to whether Cornelious was in the street obstructing traffic. The Eighth Circuit has recently emphasized that whether arguable probable cause exists for the purposes of granting or denying summary judgment on qualified immunity grounds, is a question of law that must be decided by the Court unless "a genuine dispute exists concerning predicate facts material to the qualified immunity issue." Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir. 2000). Therefore, "once the predicate facts have been established, for the purposes of qualified immunity there is no such thing as a 'genuine issue of fact' as to whether an officer 'should have known' that his conduct violated reasonable constitutional rights." Id. Here, however, there is a dispute concerning facts material to the qualified immunity defense. Officer Brubaker contends that Cornelious was standing in the middle of the street obstructing traffic while Cornelious testifies that he had already reached the other side of Rice Street. As these facts are material to whether an officer had an objectively reasonable belief that there was probable cause to arrest, the question of arguable probable cause must be reserved for the jury.

Based on the above, the Court finds that Officer Brubaker is not entitled to summary judgment based on qualified immunity. Thus, summary judgment is denied on Cornelious' false arrest claim.

**B. Excessive Force**

Cornelious further claims that Officer Brubaker employed excessive force in violation of his constitutional rights. "The right to be free from excessive force is a clearly established right under the Fourth Amendment's prohibition against unreasonable seizures of the person." Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998). The U.S. Supreme Court, however, has instructed that this generalized inquiry is insufficient when determining qualified immunity on an excessive force claim. See generally, Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151(2001). In Saucier, the Court instructed that, in deciding the qualified immunity issue, a court must first ask whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." Id. at 201. This inquiry cannot be general but must consider, "whether a constitutional right was violated on the premises alleged." Id. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id.

Second, if the Court determines that the plaintiff, based on the facts alleged, was deprived of his constitutional right, the Court must inquire, "whether the right was clearly established." Saucier, 533 U.S. at 201. The Court in Saucier held that this inquiry must be more particularized than the "excessive under objective standards of reasonableness," inquiry set forth in Graham v. Conner, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed. 2d 443 (1989). Id. at 202. Rather, the Court must ask, "whether it would be clear to a reasonable officer that his conduct was unlawful in

the situation he confronted." See Wilson v. Layne, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999). Force is excessive in violation of Fourth Amendment rights where it is "excessive under objective standards of reasonableness." Id. at 201-202. However, "the force employed by an officer is not excessive and thus not violative of the Fourth Amendment if it was 'objectively reasonable' under the particular circumstances." Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003). The objective reasonableness inquiry is considered, "in light of the facts and circumstances confronting [the officer], without regard to [his] underlying intent or motivation." Graham, 490 U.S. at 397. Factors to consider when deciding whether the officer's use of force is objectively reasonable include, "the crime's severity, whether the suspect poses an immediate threat to the safety of officers or others, and whether the suspect actively resists arrest or flees." Graham, 490 U.S. at 396. Further, "[t]he nature and quality of the intrusion on the individual's Fourth Amendment interests [must be balanced] against the importance of the governmental interests alleged to justify the intrusion." United States v. Place, 462 U.S. 696, 703, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). Further, "an officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." Id. at 397 (citations omitted). Not every push or shove violates the Fourth Amendment. Guite v. Wright, 147 F.3d 747, 750 (8th Cir. 1998).

Here, the City Defendants concede that "there are disputes as to the material facts regarding the necessity and amount of force used by Officer Brubaker; and that these disputed facts effectively preclude the court from resolving this issue on summary judgment." (City's Reply Mem. in Supp. Summ. J. at 1). The Court agrees. Viewing the facts and circumstances in the light most favorable to the non-moving party, Cornelious has created a fact question as to whether Officer Brubaker used excessive force.

Therefore, the Court must decide whether Officer Brubaker is due qualified immunity under the Saucier test. The Court has already concluded that the facts alleged could cause a reasonable jury to conclude that Officer Brubaker violated Cornelious' constitutional right to be free from unreasonable seizures. Therefore, the Court must evaluate whether the constitutional right was clearly established such that it would be "clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

Viewing the facts in the light most favorable to Cornelious, the force employed by Officer Brubaker was excessive. Even assuming Officer Brubaker had probable cause to arrest, an officer faced with an offender across the street would be unwarranted in approaching the offender with a spray can of mace before making other attempts for him to submit to the arrest. Further, once the arrestee has been subdued, there would be no reason for the officer to continue to beat upon the offender. Lastly, a reasonable officer would recognize that he was violating the rights of a detained person by spraying him with mace and beating

him while he was restrained by handcuffs in the back of a squad car. As such, the Court finds that a reasonably competent officer would not conclude that the force allegedly employed by Officer Brubaker was justified under these facts. Thus, qualified immunity is inappropriate in this instance.

## III. False Imprisonment

Cornelious asserts a state law claim of false imprisonment against Officer Brubaker, Anaya and Sampson.

### A. Officer Brubaker

Under Minnesota law, the tort of false imprisonment, when asserted against an officer, is similar to that of false arrest. See Adewale v. Whalen, 21 F. Supp.2d 1006, 1016 (D. Minn. 1998). False imprisonment requires an unlawful arrest unsupported by arguable probable cause. See id.; Guite v. Wright, 976 F. Supp. 866, 871 (D. Minn. 1997) (citing Perkins v. St. Louis County, 397 N.W.2d 405, 408 (Minn.Ct.App. 1986)). The City Defendants argue that summary judgment is appropriate on the false imprisonment claim against Officer Brubaker based on probable cause to make the arrest and the affirmative defense of official immunity. Here, the Court has already concluded that the issue of arguable probable cause must be decided by the jury.

#### 1. Official Immunity

The parties do not contest that Officer Brubaker's detention of Cornelious was discretionary. As such, the Court concludes that the governmental conduct at issue is the type to which official immunity could apply. See Gleason v.

Metropolitan Council Transit Operations, 563 N.W.2d 309, 315-316 (Minn. App. 1997), aff'd in part, 582 N.W.2d 216 (Minn. 1998). Next, the Court must determine whether Officer Brubakers' acts, "even though discretionary, were stripped of the immunity's protection because the official acted without legal reasonableness in violating a known right." Id. at 315. Official immunity protects the official, "when the official demonstrates (1.) that the conduct was 'objectively' legally reasonable; that is, legally justified under the circumstances; (2.) that the conduct was 'subjectively' legally reasonable, that is, taken with subjective good faith; or (3.) that the right allegedly violated was not clearly established, that is, that there was no basis for knowing the conduct would violate the plaintiff's rights." Id. at 318. The party asserting official immunity has the burden of showing that it is entitled to the immunity. See Rehn v. Fischley, 557 N.W.2d 328 (Minn. 1997).

Here, the Court finds that genuine issues of material fact exist on the record that preclude summary judgment on Cornelious' false imprisonment claim against Officer Brubaker. The record calls into question whether Cornelious' arrest and detention was motivated by malice. The facts viewed in Cornelious' favor indicate that Officer Brubaker initiated a confrontation on the street and that, while in the process of beating Cornelious, he issued racial epithets. Further, the City Defendants have not established that the alleged macing and assault on Cornelious while in the squad car was either objectively or subjectively reasonable where Cornelious was already restrained by handcuffs and confined by the police car,

Finally, the City Defendants have not argued that the alleged violation was not clearly established nor does the Court find that it was. Rather, the law imputes knowledge of the law to its public officials. See Rico v. State, 472 N.W.2d 100, 109 (Minn. 1991).

While the question of whether an officer acted maliciously or willfully can be resolved at summary judgment, it is usually a question of fact for the jury. See Soucek v. Banham, 503 N.W.2d 153,160 (Minn. App. 1993). The Court concludes that Officer Brubaker's detention of Cornelious in the squad car creates a fact question as to whether Officer Brubaker's actions in confining Cornelious were either willful or malicious. Therefore, the City Defendants' motion for summary judgment is denied on Cornelious' false imprisonment claim against Officer Brubaker.

**B. Anaya, Sampson and Gardner**

Under Minnesota law, the tort of false imprisonment consists of the following elements: (1.) words or acts by defendant intended to confine the plaintiff, (2.) actual confinement, and (3.) awareness by plaintiff that he or she is being confined. Peterson v. Sorlien, 299 N.W.2d 132, 133 (Minn. 1980)(citing Blaz v. Molin Concrete Products Co., 309 Minn. 382, 244 N.W.2d 277 (1976)); Eilers v. Coy, 582 F. Supp. 1093, 1096 (D. Minn. 1984).

Cornelious testifies that on the street outside Club Cancun, he was thrown to the ground where he was continually beaten by Anaya, Gardner and Officer Brubaker. The evidence suggests that Cornelious was aware that he was being

confined at the time. In addition, the defendants have not presented evidence that would suggest that Cornelious was free to leave.

The Capital Defendants do not contest that the elements of false imprisonment are met, rather, they argue that their actions were excused through the affirmative defense of necessity. In particular, they claim that the restraint was justified because they were assisting Officer Brubaker in making an arrest. Gardner also argues that he acted because he believed Cornelious was a danger to himself or to others and that he believed Cornelious was assaulting Officer Brubaker.

The necessity defense has three elements. First, the defendants must have acted under the reasonable belief that there was a danger of imminent physical injury to the plaintiff or to others. See Eilers v. Coy, 582 F.Supp. 1093, 1097 (D. Minn. 1984)(citing State v. Johnson, 289 Minn. 196, 199-200, 183 N.W.2d 541, 543 (1971)). Second, the right to confine a person in order to prevent harm to that person must last only as long as necessary to get the person to the proper lawful authorities. See Eilers, 582 F. Supp. at 1098 (citing State v. Hembd, 305 Minn. 120, 130, 232 N.W.2d 872, 878 (1975)). Third, the actor must use the least restrictive means of preventing the apprehended harm. See Eilers, 582 F. Supp. at 1098.

The Court finds that questions of fact exist on each element of the necessity defense. As such, the Capital Defendant's motion for summary judgment on the false imprisonment claim is denied.[1]

### IV. Section 1983 Conspiracy

In his Complaint, Cornelious alleges a § 1983 conspiracy claim against Officer Brubaker, Anaya, and Gardner. Due to some confusion among the parties as to whether Cornelious' conspiracy claim alleged racial discrimination, the parties submitted letter briefs following oral argument on the § 1983 conspiracy claim.

A § 1983 conspiracy claim can only be sustained where the plaintiff demonstrates that the defendants committed a constitutional violation. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970); DuBose v. Kelly, 187 F.3d 999, 1002 (8th Cir. 1999); Jones v. Gutschenritter, 909 F.2d 1208, 1211 (8th Cir. 1990). Here, the Court has determined that Cornelious has valid false arrest and excessive force claims against Officer Brubaker. The Court has also denied Officer Brubaker's claim of summary judgment on qualified immunity grounds.

---

[1] Cornelious asserts that Capital Investigations is liable for Anaya and Gardner's actions on the false imprisonment claim under the doctrine of *respondeat superior*. Capital Investigations does not contest this claim. Because the false imprisonment claim against Anaya and Gardner survives summary judgment, the *respondeat superior* claim against Capital Investigations survives as well.

As to the Capital Defendants, Cornelious testified that Anaya and Gardner participated in the assault on him outside Club Cancun. Based on these actions, Cornelious argues that the defendants conspired to deprive him of his constitutional right to freedom from excessive force and false arrest.

Claims under § 1983 require that the constitutional violation be committed under "color of state law." 42 U.S.C. § 1983. As such, private actors are exempt from § 1983 liability for private conduct. See American Mfrs. Mut. Ins. v. Sullivan, 526 U.S. 40, 49-50 (1999). However, private actors can be held liable in a § 1983 conspiracy action where they are willing participants in a joint action with a government official who is acting under color of state law. See Miller v. Compton, 122 F.3d 1094, 1098 (8th Cir. 1997); DuBose, 187 F.3d at 1003. In order to maintain a prima facie case, the plaintiff must show that the defendants reached an understanding to deprive Cornelious of his constitutional rights. Thus, in order to survive summary judgment, Cornelious must proffer sufficient evidence to show that the defendants "directed themselves toward an unconstitutional action by virtue of a mutual understanding" and demonstrate that the facts indicate that the defendants formed a "meeting of the minds." DuBose, 187 F.3d at 1003 (quoting White v. Walsh, 649 F.2d 560, 561 (8th Cir. 1981).

There is no dispute among the parties that Officer Brubaker was acting under color of state law when he detained Cornelious. The defendants, however, argue that Cornelious has presented insufficient evidence to suggest that an

"agreement" was formed among the parties for the purposes of a § 1983 conspiracy claim.

The Eighth Circuit has stated, however, that, "[c]onspiracies are by their nature usually clandestine. It is unlikely that a plaintiff in a conspiracy case will be able to provide direct evidence of a conspiratorial agreement. Thus, such evidence is not necessary to prove that a civil conspiracy existed." White v. Walsh, 649 F.2d 560 (quoting Sparkman v. McFarlin, 601 F.2d 261, 278 n. 19 (7th Cir. 1979); See, e.g., DuBose at 1003.

Cornelious offers the following facts of record in support of his § 1983 conspiracy claim against the three individual:

(1) Before Cornelious exited Club Cancun, Anaya knew that Cornelious was not ejected from the Bar. (Anaya Dep. at 57).
(2) Officer Brubaker was on the sidewalk outside Club Cancun talking to security personnel when Cornelious exited the club. (Cornelious Dep. at 86).
(3) Officer Brubaker was followed closely by Anaya and Gardner as they all charged into the street after Cornelious. (Id. at 90).
(4) Cornelious was attacked and assaulted in the street by Officer Brubaker, Anaya and Gardner. (Id. at 96, 99).
(5) Prior to the incident, Anaya and Gardner knew Officer Brubaker from working at Club Cancun. (Anaya Dep. at 44; Gardner Dep. at 51).

(Pl.'s Letter Brief. at 2).

Based on these facts, the Court finds that a reasonable jury could conclude that there was a mutual understanding or a "meeting of the minds" among Officer Brubaker, Anaya and Gardner to use excessive force against Cornelious. Further,

because fact questions remain on the false arrest claim, a reasonable jury could conclude that the parties conspired in effectuating an unlawful arrest.

Accordingly, summary judgment is also denied on Cornelious' § 1983 conspiracy claim against Officer Brubaker, Anaya and Gardner.

Based on the above together with all files of record,

**IT IS HEREBY ORDERED** that:

1.) Defendant City of St. Paul and Officer Brubaker's Motion for Summary Judgment [Docket No. 32] is **DENIED** on Count One regarding False Arrest and Excessive Force by Officer Brubaker, Count Seven, and Count Nine of the Complaint; and is **DISMISSED** as to the remaining counts.

2.) Defendant Capital Investigations, Defendant Anaya and Defendant Gardner's Motion for Summary Judgment [Docket No. 25] is **DENIED** on Count Five, Count Seven and Count Nine of the Complaint; and is **DISMISSED** as to the remaining counts.

3.) Plaintiff's Complaint [Docket No. 1] is **DISMISSED WITHOUT PREJUDICE** , **<u>except</u>** Count One regarding claims of Excessive Force and False Arrest against Officer Brubaker, Count Five, Count Seven and Count Nine.

Date: June 25, 2003

Michael J. Davis
Michael J. Davis
United States District Court